ABRAHAM KADNER, APPELLEE, v. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED FEBRUARY 12, 1915.   No. 18,016.

1. **Carriers:** INJURY TO PASSENGER: RIGHT TO RECOVER: CONTRIBUTORY NEGLIGENCE. It is not such negligence for a passenger to stand on the front step of a crowded street car while in motion as will *per se* prevent a recovery for injuries received in consequence of the negligence of the servants of the street car company or of other persons who are crowded upon the platform of the car.

2. ———: ———: NEGLIGENCE. It is evidence of negligence on the part of a street railway company to carry passengers greatly in excess of the seating capacity of its trains, and permitting them to stand on the platforms and steps of the cars. *Pray v. Omaha Street R. Co.*, 44 Neb. 167.

3. ———: ———: ———: PRESUMPTION. A person standing on the steps of a moving street car, being unable to secure a seat or stand-

ing room within, is presumed to be there with the consent of the servants in charge of the train.

4. ———: ———: ———: QUESTION FOR JURY. The plaintiff, a lad 12 years of age, went to the corner of Twenty-fourth and Lake streets, in the city of Omaha, in order to take a car which would transport him to the place where he was attending school. When the car reached the place where he, with others, was waiting, it came to a stop, thus inviting him to become a passenger thereon. Being unable to get inside of the car, he secured standing room on the front steps of the car, holding onto the dashboard and the handle attached to the body of the car. When the car reached Twentieth street, it swung around the corner onto that street, and the movement of the car caused the passengers who were crowded on the front platform to sway outward against the plaintiff, and he was thus forced off the car, fell to the pavement, and received the injuries complained of. *Held*, That the questions c the negligence of the street car company and of the contributory negligence of the plaintiff were for the jury.

5. **Jury: VOIR DIRE: CHALLENGE.** The rulings of the court on the impaneling of the jury were without error.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed.*

*John L. Webster* and *W. J. Connell,* for appellant.

*J. C. Kinsler* and *Martin L. Sugarman, contra.*

BARNES, J.

This was an action brought by one Abraham Kadner, a boy about 12 years old, by his next friend, to recover damages against the street car company for negligence, which, it was alleged, caused his injuries.

The petition alleged, in substance, that the defendant was negligent in allowing its car to become overcrowded with passengers and in operating the car in such a manner as to cause the plaintiff to be pushed, or thrown, to the ground and under the wheels of the moving car, thus causing his injuries. The answer was a denial of the acts of negligence alleged in the petition, and it was further alleged that plaintiff was not a passenger, but was attempting to steal a ride, and was pushed off the car by one not a

passenger at the time of the injury. It was also alleged
that plaintiff's injuries were caused by his own contribu-
tory negligence. The reply was, in substance a general de-
nial. The cause was tried in the district court for Douglas
county and a verdict was returned for the plaintiff in the
sum of $4,125. Judgment was rendered on the verdict,
and the defendant has appealed.

The record discloses the following facts: In Septem-
ber, 1910, the defendant was operating a double-track street
car line running east and west on Lake street, which turns
south on Twentieth street, in the city of Omaha. This line
was known as the Dodge street line, and was much used
by pupils who attended the various public schools. Plain-
tiff was living with his parents on Twenty-fourth street
about half a block south of Lake street, where they kept
a grocery store. At that time he was attending the Lake
school. He assisted his stepfather at the store during the
holidays and periods of recreation. A few days before
the accident, which happened on the 26th day of Septem-
ber, 1910, plaintiff sprained his ankle and was obliged to
remain at home from school until the following Monday
morning. It was already quite late when the plaintiff de-
cided that it would be best for him to go to school that
day on the street car. His stepfather gave him the money
with which to pay his fare, and he went across to the south-
east corner of Twenty-fourth and Lake streets, where a
large number of other school children were waiting for the
east-bound car. When the car arrived, it came to a stop
at the regular stopping place on the east side of Twenty-
fourth street. The car was already crowded to its full ca-
pacity and the platforms were filled with passengers. The
plaintiff went first to the rear platform, but by the time
he got there it was so crowded that it was impossible for
him to get a place even on the rear step of the car. He
then went to the front platform, which was also crowded
with passengers, but, with the assistance of another boy,
who was attending the high school, he managed to get what
seemed to be a good, safe place to stand on the front end
of the car. He had both feet on the step and took hold of

the handles with both hands, one hand on the handle attached to the body of the car and the other on the handle on the front end of the car. The conductor took on as many passengers at this point as the car platforms and steps would hold. The motorman was so pressed, crowded and hemmed in by the passengers on the front platform that it was impossible for him to see a person on the front step of the car. Very shortly after the plaintiff got in what seemed to him a safe position on the front step of the car, the conductor rang the bell and the motorman started the car east toward Twentieth street. The plaintiff had his money in his pocket ready to pay his fare. The conductor was somewhere inside of the car collecting fares from other passengers. The car proceeded east until it came to a switch located on Lake street just west of Twentieth street. It was necessary to stop the car at that place in order to throw the switch so as to permit the car to swing around the corner and go south on Twentieth street. When the car was stopped at the switch, the front platform was so crowded that the motorman could not throw the switch himself, so he arranged with a boy on the street to do it for him. The boy who threw the switch wanted to go down town, and the motorman waited for him to board the car and in some manner he crowded on the front platform. The car was started and swung around the curve at increasing speed. It did not make the usual stop, and as it swung around the curve the passengers who were crowded on the front platform surged out to the west and were pushed and thrown against the plaintiff so that he was forced to let go his hold on the handles of the car. He fell beneath the wheels in such a way that his left foot was mangled and crushed so that it became necessary to amputate the leg between the foot and knee. The toes of his right foot were also bruised and crushed. The motorman testified that he had no intention of bringing his car to a stop at the usual stopping place on the south side of Lake street; that the car was loaded; that he had all that could be taken on at Twenty-fourth and Lake streets, and that he intended to go right on down town. The car was proceed-

ing at such a rate of speed that the motorman was unable to stop it until it got about a block south of Lake street, although he was promptly advised by one Kenneth Craig that the car had run over the plaintiff.

At the close of the evidence the defendant requested the court to direct a verdict in its favor because the facts proved failed to establish any actionable negligence on its part. The request was overruled and the ruling is assigned as error. In support of the assignment the defendant cites *McCumber v. Boston Elevated R. Co.,* 207 Mass. 559, *Seale v. Boston Elevated R. Co.,* 214 Mass. 59, *Huber v. Cedar Rapids & M. C. R. Co.,* 124 Ia. 556, and *Lehberger v. Public Service R. Co.,* 79 N. J. Law, 134. The *McCumber* case seems to be most relied on. In that case it was said: "The plaintiff voluntarily and intelligently became a passenger upon a car so crowded that she could not get a seat, and knew that perhaps she might be obliged to stand in the vestibule. This was not negligence on her part, but by doing so she assumed whatever obligation or risk was incident to that condition. * * * It is not negligence on the part of a carrier in the present state of transportation to permit passengers to come upon cars which are already crowded. * * * That there was some pushing in the effort to pass the plaintiff is not significant. It is only when done in a disorderly way that it becomes of consequence. Hence there was no evidence of negligence on the part of the defendant." The other cases cited seem to, in a way, support the rule announced in the *McCumber* case.

So far as this court is concerned it has evidently repudiated that doctrine. In *Pray v. Omaha Street R. Co.,* 44 Neb. 167, it was held: "It is not such negligence for a passenger to stand on the front steps of a crowded street car while in motion as will *per se* prevent a recovery for injuries received in consequence of the negligence of persons in charge thereof." It was further held: "It is evidence of negligence on the part of a street railway company to carry passengers greatly in excess of the seating capacity of its trains, and permitting them to stand on the platforms and steps of the cars. A person standing on the

steps of a moving street car, being unable to secure a seat or standing room within, is presumed to be there with the consent of the servants in charge of the train." It was also held in that case: "Street railway companies in this state are common carriers, and are presumptively liable for the concurrent negligence of their servants and third persons resulting in personal injuries to passengers."

In the above case the plaintiff, a lad 14 years of age, boarded the defendant's train at South Omaha, bound for the city of Omaha. When he reached the train, which was waiting at the terminus of the line, it was so crowded that he was unable to get inside, but secured standing room on the rear platform of the trailer. When the first stop was made, four blocks distant, he stepped off the train to assist a fellow passenger to alight, and was unable to get upon the platform again, his place being occupied by other passengers. He went forward immediately and secured standing room on the front step of the trailer, holding onto the dashboard and to the iron rail attached to the car for the distance of a block, when he was forced, by the pressure of the other passengers on the platform, to relinquish his hold, and fell, receiving the injuries complained of. It was there held that the question of negligence was for the jury and it was error to direct a verdict for the defendant. This rule is supported to some extent by *Spellman v. Lincoln Rapid Transit Co.*, 36 Neb. 890, and *East Omaha Street R. Co. v. Godola*, 50 Neb. 906. We are constrained to follow the rule in those cases, and we therefore hold that the motion for a directed verdict was properly overruled.

Defendant contends that it was not guilty of negligence by reason of any movement of the car which was consistent with its proper management under the circumstances. This question seems to have been settled by the opinion in the *Pray* case, *supra*. If the movement of the car was such as to cause the passengers, who crowded onto the platform, to force the plaintiff from the steps of the car where he had obtained a foothold, then the question of negligence was one for the determination of the jury and this assignment must fail. Therefore it was not error for the court to

refuse to instruct the jury as requested by the defendant on that point.

It is also contended that the court should have directed a verdict in defendant's favor because the plaintiff was not crowded from the car by any act of its trainmen, but was in fact crowded from the step by a stranger who attempted to board the car. There was some testimony which tended to support that theory, but the evidence as a whole on that point was conflicting, and therefore that question was properly submitted to the jury.

It is further contended that the court erred by not instructing the jury that the plaintiff was guilty of contributory negligence in getting upon the front step of the crowded street car, he having been admonished not to get onto a crowded car. We find nothing in the record tending to show that the defendant's servants gave plaintiff any warning of that kind. On the contrary, they paid no attention to his movements.

The opinion in the *Pray* case, *supra,* holds, in substance, that a boy 14 years of age was not guilty of contributory negligence. In the case at bar the plaintiff was only a little more than 12 years old, and while we might be constrained to hold that a person of mature years and judgment would be guilty of contributory negligence, under the circumstances of this case, we think, where the plaintiff was immature in years and without discretion, the question of contributory negligence was properly submitted to the jury.

Finally, it is contended that the court erred in not sustaining defendant's challenge to the juror Haynes. The record shows that the juror, when examined by counsel for plaintiff, stated that he had a kind of general prejudice against corporations, but he had no prejudice of any kind against the defendant street railway company; that he knew nothing about the case on trial; that he could try the case fairly and impartially and without regard to the feeling referred to; that he could try the case as fairly and impartially as he could one between two individuals; that he could try the case on the evidence and the law alone

without regard to any other thing, and, if sworn as a juror, he would do so. The court then asked the juror: "Suppose you had a trial, a case of your own here, and you would call 12 men into the jury box who felt toward you just exactly like you feel toward these men, would you be perfectly willing to try your case before those men?" The juror answered, "I would. Q. Perfectly willing? A. Yes, sir." The court saw the juror, heard his statements, and observed his manner of answering questions, and then in the exercise of his discretion overruled defendant's challenge for cause. In this ruling there was no abuse of discretion. The record further shows that the juror was excused by the exercise of one of defendant's peremptory challenges.

As we view the record, it contains no reversible error. The defendant had a fair trial, and the judgment of the district court is

AFFIRMED.

MORRISSEY, C. J., ROSE and SEDGWICK, JJ., not sitting.