[No. 27435-7-III.   Division Three.   December 24, 2009.]

*In the Matter of the Decertification of* CRAIG MARTIN, *a Peace Officer.*

CRAIG MARTIN, *Respondent*, v. THE CRIMINAL JUSTICE TRAINING COMMISSION, *Appellant.*

---

*Robert M. McKenna, Attorney General,* and *Melanie Tratnik, Assistant,* for appellant.

*Michael D. Kinkley* (of *Michael D. Kinkley PS*), for respondent.

¶1 KULIK, A.C.J. — Following Craig Martin's resignation as a Stevens County Sheriff's Officer, the Criminal Justice Training Commission (Commission) revoked Mr. Martin's peace officer certification based on disqualifying misconduct. Mr. Martin contends that the composition of the Commission's hearing panel was improper because it did not include two tribal members. And he asserts the denial of his request for a continuance was error. The superior court ruled in favor of Mr. Martin. The Commission appealed.

¶2 We conclude that the Commission correctly determined that Mr. Martin was discharged for qualifying misconduct. We, therefore, reverse the decision of the superior court and affirm the Commission's decision.

## FACTS

¶3 We derive the facts from the Commission's findings of facts and conclusions of law. Mr. Martin has not assigned error to any of these findings. Unchallenged facts are verities on appeal. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

¶4 Mr. Martin was employed by the Stevens County Sheriff's Office as a sheriff's deputy. On October 4, 2004, Deputy Martin stopped Thomas Cochrane's vehicle for failing to stop at a stop sign. Mr. Cochrane gave Deputy Martin his expired license because he had no other photo identification. Deputy Martin placed Mr. Cochrane under arrest for violation of RCW 46.20.005, driving without a

license, a misdemeanor. Deputy Martin released Mr. Cochrane to his wife at the scene.

¶5 It is a traffic infraction under RCW 46.20.015, not a misdemeanor under RCW 46.20.005, to drive without a valid driver's license if the driver presents the officer with an expired license, or other valid identification, and the driver is not driving with a suspended or revoked license.

¶6 On October 9, Mr. Cochrane contacted the sheriff's office complaining about the traffic stop. Three days later, Captain Michael George interviewed Deputy Martin as part of the internal investigation. During this interview, Deputy Martin repeatedly stated that he never had possession of Mr. Cochran's driver's license during the traffic stop. Deputy Martin was untruthful when he told Captain George that he did not have possession of Mr. Cochrane's license during the traffic stop.

¶7 Captain George was a public servant discharging his official duties when he interviewed Deputy Martin. Deputy Martin knowingly made false or misleading statements to Captain George when he repeatedly told Captain George that he did not have possession of Mr. Cochrane's driver's license during the traffic stop. These statements were material because Captain George was reasonably likely to rely on these statements in the discharge of his duties.

¶8 Deputy Martin resigned on October 12, 2004, while the internal investigation was pending. Sheriff Craig Thayer accepted the resignation. Deputy Martin would more likely than not have been terminated had he not resigned. The Stevens County Sheriff's Office notified the Commission of Mr. Martin's termination in a notice of officer termination dated January 6, 2006.

¶9 On June 20, the Commission issued a statement of charges seeking to revoke Mr. Martin's peace officer certification based on the fact that he was discharged from the Stevens County Sheriff's Office for disqualifying misconduct. Specifically, the Commission alleged that Mr. Martin was discharged from the Stevens County Sheriff's Office for

making a false or misleading statement—within the meaning of Evidence Rule 609(a)—to a public servant pursuant to RCW 9A.76.175. Mr. Martin requested a hearing. The Commission's hearing panel concluded that Mr. Martin was discharged for disqualifying misconduct within the meaning of former RCW 43.101.010(7)(b) (2003).

¶10 Mr. Martin appealed to the superior court. The superior court reversed and remanded for a new hearing. The Commission appealed to this court.

## ANALYSIS

¶11 When reviewing an appeal of an administrative hearing decision, this court sits in the same position as the superior court, applying standards of chapter 34.05 RCW, the Administrative Procedure Act (APA), directly to the record before the agency. *See Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). Under the APA, the burden of demonstrating the invalidity of the agency action is on the party asserting invalidity, and the reviewing court "shall grant relief only if it determines that a person seeking judicial relief has been substantially prejudiced by the action complained of." RCW 34.05.570(1)(a), (d).

¶12 To reverse an administrative order, a reviewing court must find (1) that the order is based on an error of law, (2) the order is based on findings not supported by substantial evidence, (3) the order is arbitrary or capricious, (4) the order violates the constitution, (5) the order is beyond the statutory authority, or (6) the agency has engaged in an unlawful procedure or decision-making process or has failed to follow a prescribed procedure. RCW 34.05.570(3); *Tapper*, 122 Wn.2d at 402.

¶13 Mr. Martin contended, and the superior court agreed, that he was a tribal officer thus requiring the Commission's hearing panel to include two tribal members. Mr. Martin also contended the hearing panel denied him a fair hearing by failing to grant a continuance. The error of law standard is applied to Mr. Martin's contention

that the hearing panel should have included tribal members and to the legal question of whether Mr. Martin can raise this claim for the first time on appeal. The question of whether the hearing panel erred by denying Mr. Martin's motion for a continuance is reviewed for an abuse of discretion.

¶14 *Composition of the Hearing Panel*. Mr. Martin did not object to the composition of the hearing panel before the hearing. Instead, Mr. Martin objected to the composition of the hearing panel for the first time before the superior court and now before this court. This court sits in the same position as the superior court and reviews the record before the hearing panel. Consequently, Mr. Martin has raised his objections to the composition of the hearing panel for the first time on appeal.

■■ ¶15 The APA limits judicial review of issues raised for the first time on appeal. Specifically, RCW 34.05.554 sets forth the limitations on the review of new issues. RCW 34.05.554 states:

(1) Issues not raised before the agency may not be raised on appeal, except to the extent that:

(a) The person did not know and was under no duty to discover or could not have reasonably discovered facts giving rise to the issue;

(b) The agency action subject to judicial review is a rule and the person has not been a party in adjudicative proceedings that provided an adequate opportunity to raise the issue;

(c) The agency action subject to judicial review is an order and the person was not notified of the adjudicative proceeding in substantial compliance with this chapter; or

(d) The interests of justice would be served by resolution of an issue arising from:

(i) A change in controlling law occurring after the agency action; or

(ii) Agency action occurring after the person exhausted the last feasible opportunity for seeking relief from the agency.

(2) The court shall remand to the agency for determination any issue that is properly raised pursuant to subsection (1) of this section.

¶16 None of the exceptions contained in RCW 34.05.554 apply to Mr. Martin's claim that the hearing panel should have included two tribal members.

¶17 More importantly, "[a] litigant who proceeds to a trial or hearing before a judge despite knowing of a reason for potential disqualification of the judge waives the objection and cannot challenge the court's qualifications on appeal." *Buckley v. Snapper Power Equip. Co.*, 61 Wn. App. 932, 939, 813 P.2d 125 (1991) (waiver of objection to ex parte communication). This rule is applicable when the disqualification is sought on statutory grounds or under common law rules of disqualification for conflict of interest. *Brauhn v. Brauhn*, 10 Wn. App. 592, 597, 518 P.2d 1089 (1974); *Hill v. Dep't of Labor & Indus.*, 90 Wn.2d 276, 279, 580 P.2d 636 (1978). This rule has also been applied when disqualification is claimed based on due process. *Brauhn*, 10 Wn. App. at 597.

¶18 The review of new issues on appeal is also addressed in RAP 2.5(a). Under this provision, an appellate court may refuse to review any claim of error that was not raised in the trial court and that does not involve an issue of constitutional magnitude. *Id.*

¶19 When a constitutional error is asserted for the first time on appeal, we first determine whether the error is truly of constitutional magnitude. After determining the error is of constitutional magnitude, the appellate court must determine whether the error was manifest. "Manifest" in RAP 2.5(a)(3) requires a showing of actual prejudice. *State v. McFarland*, 127 Wn.2d 322, 333-34, 899 P.2d 1251 (1995). To demonstrate actual prejudice, there must be a " 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.' " *State v. WWJ Corp.*, 138 Wn.2d 595, 603, 980 P.2d 1257 (1999) (quoting *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992)). In determining whether the error's consequences were identifiable, the trial record must be sufficient to determine the merits of the claim. *McFarland*, 127 Wn.2d at 333. "If the facts necessary

to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest." *Id.*

¶20 Mr. Martin raised his objections to the composition of the hearing panel for the first time on appeal. Even though Mr. Martin has raised the issue of the composition of the hearing panel for the first time on appeal, this court has the discretion to consider it. RAP 2.5(a). He maintains that he has a property right and a liberty right in maintaining his state law enforcement officer certification. But he makes no argument linking these rights to the composition of the hearing panel and he has shown no actual prejudice. Mr. Martin's primary argument is that he has a statutory right to have two tribal members on the hearing panel. But he is mistaken.

¶21 Mr. Martin bore the burden of demonstrating that the agency erroneously interpreted or applied the law by failing to include two tribal members on the five-person hearing panel. RCW 34.05.570(3)(d). On the date of his hearing, March 5, 2007, Mr. Martin was a peace officer with the Kalispel Tribe of Indians. Mr. Martin argues that the versions of RCW 43.101.157(3) and RCW 43.101.380(2) in effect on that date apply to determine the composition of the hearing panel.

¶22 The controversy here is the result of amendments to former RCW 43.101.380(2) (2001). Prior to January 1, 2007, former RCW 43.101.380(2)(a) read as follows:

> *When an appeal is filed* in relation to decertification of a Washington peace officer who is not a peace officer of the Washington state patrol, *the commission shall appoint to the panel*: (i) One police chief; (ii) one sheriff; (iii) two peace officers who are at or below the level of first line supervisor, who are from city or county law enforcement agencies, and who have at least ten years' experience as peace officers; and (iv) one person who is not currently a peace officer and who represents a community college or four-year college or university.

¶23 The plain words of the statute clearly state that commission members must be appointed "when an appeal

is filed." This means that the composition of Mr. Martin's hearing panel was determined on the date when Mr. Martin requested a hearing. Mr. Martin requested a hearing on June 27, 2006. On that date, there was no requirement that tribal members serve on hearing panels.

¶24 Mr. Martin argues that under the amendment to former RCW 43.101.380(2), the composition of the hearing panel was set on the date of the hearing, which was March 5, 2007. LAWS OF 2006, ch. 22, § 3, effective January 1, 2007. Beginning on January 1, 2007, former RCW 43.101.380(2)(c) read, in part, as follows:

> When a hearing is requested in relation to decertification of a tribal police officer, the commission shall appoint to the panel . . . (ii) one tribal police chief; [and] (iv) one tribal police officer who is at or below the level of first line supervisor, and who has at least ten years' experience as a peace officer.

¶25 Like former RCW 43.101.380(2)(a), the amended version of the statute, RCW 43.101.380(2)(c), provides that the hearing panel is appointed "when a hearing is requested." Consequently, under either version, the composition of the hearing panel is set when the hearing is requested. The hearing here was requested on June 27, 2006, so former RCW 43.101.380(2) (2001) applies.

¶26 Mr. Martin points out that the composition of the hearing panel was changed several times. Specifically, he refers to the finding that the Commission changed its composition after the effective date of the amendments to former RCW 43.101.380(2)(c). However, while the individuals on the hearing panel might have changed, the Commission was still required, by statute, to appoint a panel of a particular composition. The composition of this hearing panel is determined on the date the hearing is requested.

¶27 *Motion for a Continuance*. The grant or denial of a motion for a continuance will not be disturbed absent an abuse of discretion. *State v. Cannon*, 130 Wn.2d 313, 326, 922 P.2d 1293 (1996) (quoting *State v. Silva*, 72 Wn. App. 80, 83, 863 P.2d 597 (1993)). An agency abuses its

discretion by exercising its discretion in an arbitrary and capricious manner. *Conway v. Dep't of Soc. & Health Servs.*, 131 Wn. App. 406, 419, 120 P.3d 130 (2005). An agency acts in an arbitrary manner if its actions are willful, unreasoning, and in disregard of the facts and the circumstances. *Washington Waste Sys., Inc. v. Clark County*, 115 Wn.2d 74, 81, 794 P.2d 508 (1990). Mr. Martin proceeded pro se at the commission hearing. A pro se litigant is held to the same rules of procedural and substantive law as an attorney. *Westberg v. All-Purpose Structures, Inc.*, 86 Wn. App. 405, 411, 936 P.2d 1175 (1997). The presiding member of the hearing panel denied Mr. Martin's motion for a continuance. This motion was filed three working days before the hearing. Mr. Martin requested this continuance in order for Steve Bruchman to testify in person. On the date of the scheduled hearing, Mr. Bruchman was scheduled to be on a boat in Hawaii.

¶28 The presiding member denied the motion for a continuance but allowed Mr. Bruchman to testify telephonically pursuant to RCW 34.05.449. Other witnesses, including Mr. Cochrane, Sheriff Thayer, and Tony Strom also testified telephonically.

¶29 Mr. Martin does not argue that the denial of the continuance was an abuse of discretion. Instead, Mr. Martin contends that the denial of his motion for a continuance denied him a fair hearing in violation of his due process rights.

¶30 Due process requires " 'such procedural protections as the particular situation demands.' " *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). Due process is protected when reasonable administrative standards and procedural safeguards exist. *See Weyerhaeuser Co. v. Sw. Air Pollution Control Auth.*, 91 Wn.2d 77, 82-83, 586 P.2d 1163 (1978).

¶31 Mr. Martin cites no cases establishing that the denial of a continuance while granting permission to

have the witness testify telephonically constitutes a violation of due process.

¶32 Mr. Martin contends that Mr. Bruchman's testimony would have contradicted Sheriff Thayer's testimony that Mr. Martin resigned in anticipation of discharge. The superior court concluded that even though Mr. Bruchman did testify, it was difficult for Mr. Martin to create a record because Mr. Bruchman testified, " 'I apologize for my lack of (inaudible) but I have not had an opportunity to really go over the file and answer definitely to the broader questions so my apologies.' " Clerk's Papers at 56.

¶33 The comment referred to by the superior court came at the end of Mr. Bruchman's testimony, when he was being questioned by the assistant attorney general, not Mr. Martin. This statement appears to dovetail with a comment made by Mr. Bruchman at the beginning of his testimony: "Yes. Let me preface all of my answers with that I do not have any of the file information in front of me so I'm going to have to presuppose that the dates and times that are presented to me and referred to are accurate." Administrative Record (AR) at 217. What the superior court labeled as a failure of telephonic testimony appears instead to be a failure of preparation on Mr. Bruchman's part.

¶34 Mr. Martin contends that he did not receive a fair hearing because he needed Mr. Bruchman to testify that Sheriff Thayer agreed to give Mr. Martin a neutral recommendation. According to Mr. Martin, this testimony by Mr. Bruchman would contradict testimony given by Sheriff Thayer. But Mr. Martin did not pursue that line of questioning or establish that Mr. Bruchman had notes of the meeting or was otherwise unable to give this testimony telephonically. Instead, Mr. Martin asked three questions concerning discussions he had had with members of the Stevens County Sheriff's Office. These questions were (1) whether Captain George had possession of Mr. Cochrane's driver's license, (2) whether Captain George said he was going to turn the license in for prints, and (3) whether Captain George's demeanor was accusatory. These questions re-

quest no information concerning the area of inquiry Mr. Martin now wants Mr. Bruchman to discuss in order for the hearing to comport with due process.

¶35 Mr. Martin contends that the State objected to the last question and that this objection was made and sustained without identifying any evidentiary rule. The precise questions asked of Mr. Bruchman were: "[W]hat do you think the demeanor of Captain George was when he was interviewing me? Do you think that he was accusatory?" AR at 219. The State objected that the question was irrelevant and speculative. This objection was sustained each time Mr. Martin asked the question. Mr. Martin was given the opportunity to rephrase the question and he asked, "[D]o you think Captain George went into that interview with the predetermined notion that I was guilty before looking at all the facts?" *Id.* The State again objected based on speculation and lack of foundation. The objection was sustained. Mr. Martin then ended his questioning of Mr. Bruchman without asking any questions about meeting with Sheriff Thayer or the alleged agreement.

¶36 Mr. Martin points out that the hearing panel granted other continuances yet denied his motion for a continuance. However, an examination of the hearing panel's decision to grant the other continuance does not reveal any prejudice or unfairness to Mr. Martin. Mr. Martin requested his continuance three working days before the hearing even though no evidence was presented that Mr. Bruchman's trip to Hawaii was an emergency. Moreover, granting a continuance based on three-days notice is disruptive when the hearing is held in King County and panel members are drawn from the counties of Whitman, Snohomish, Mason, Clark, and King. In contrast, the hearing panel granted a continuance requested by the assistant attorney general one month before the hearing date. Another continuance was granted when the hearing was cancelled due to severe weather conditions that closed the Commission's facility.

¶37 Mr. Martin has failed to show that the hearing panel's presiding member abused his discretion or acted in an arbitrary or capricious manner when denying Mr. Martin's motion for a continuance. In addition, Mr. Martin has failed to establish that his due process rights were violated when the presiding officer refused to grant a continuance and ordered telephonic testimony pursuant to RCW 34.05.449.

¶38 *Motion To Supplement the Record.* Mr. Martin asks this court to supplement the record with a declaration by Mr. Bruchman. Mr. Martin states that the declaration is attached to his brief, but it is not. Mr. Martin explains that in the declaration, Mr. Bruchman testifies that he was present when the sheriff agreed to offer a neutral recommendation and that Mr. Martin relied on this representation in offering his resignation and forfeiting his rights to civil service and union grievance procedures.

¶39 Mr. Martin does not address the six mandatory factors for allowing supplemental evidence found in RAP 9.11. He also fails to establish that the declaration is proper additional evidence under RCW 34.05.562. The declaration does not constitute newly-discovered evidence merely because Mr. Martin failed to ask Mr. Bruchman questions regarding any agreement between Mr. Martin and Sheriff Thayer. Moreover, if Mr. Martin is allowed to supplement the record, he would be attempting to raise an issue for the first time on appeal when he fails to meet the narrow exceptions contained in RCW 34.05.554.

¶40 We deny the motion to supplement the record.

¶41 *Equitable Estoppel.* Equitable estoppel may apply where an admission, statement, or act has been detrimentally relied on by another party. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 19, 43 P.3d 4 (2002). Equitable estoppel against the government is disfavored. *Kramarevcky v. Dep't of Soc. & Health Servs.*, 122 Wn.2d 738, 743, 863 P.2d 535 (1993).

¶42 To establish equitable estoppel against the government, there must be proof by clear, cogent, and

convincing evidence of an admission, act, or statement that is inconsistent with a later claim, another party's reasonable reliance on the admission, act, or statement, and injury to the other party that would result if the first party is permitted to repudiate or contradict the earlier admission, act, or statement. *Campbell & Gwinn*, 146 Wn.2d at 20. This doctrine may not be asserted against the government unless it is necessary to prevent a manifest injustice and it must not impair the exercise of a government function. *Id.*

¶43 At issue here is Mr. Martin's letter of resignation, which was initialed by the sheriff. In the letter, Mr. Martin states that he "expect[s] a neutral employment reference." AR at 97. Significantly, this letter references Mr. Martin's expectation, not a promise by the sheriff. Moreover, even if it is assumed that the sheriff made a promise to provide a neutral recommendation, the sheriff's testimony that he would have terminated Mr. Martin had he not resigned is not inconsistent with any earlier promise of a neutral recommendation. There are many reasons why an employer might terminate an employee yet give a neutral recommendation. Also, Mr. Martin admits that he knew he would have been terminated if he did not resign. This admission undercuts his argument that Sheriff Thayer's testimony on this issue was false.

¶44 The Commission argues that use of equitable estoppel here would impair the exercise of a government function—the ability of the government to prevent unsuitable individuals from serving as law enforcement officers. We need not consider this argument as Mr. Martin has failed to prove equitable estoppel.

¶45 *Sufficiency of the Evidence.* RCW 43.101.380(1) provides that the standard of proof for actions before the Commission is clear, cogent, and convincing evidence. Specifically, RCW 43.101.380(1) reads as follows:

> The procedures governing adjudicative proceeding before agencies under chapter 34.05 RCW, the administrative procedure

act, govern hearings before the commission and *govern all other actions before the commission unless otherwise provided in this chapter*. The standard of proof in actions before the commission is *clear, cogent, and convincing evidence*.

(Emphasis added.)

¶46 Under the APA, a finding of fact will be upheld if supported by "evidence that is substantial when viewed in light of the whole record before the court." RCW 34.05.570(3)(e). Evidence is shown by clear, cogent, and convincing evidence "when the *ultimate* fact in issue is shown by the evidence to be 'highly probable.' " *In re Dependency of K.R.*, 128 Wn.2d 129, 141, 904 P.2d 1132 (1995) (emphasis added) (internal quotation marks omitted) (quoting *In re Welfare of Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)). The use of the clear, cogent, and convincing standard here comports with due process. "The minimum constitutional standard of proof in a professional disciplinary hearing is clear and convincing evidence." *Ongom v. Dep't of Health*, 159 Wn.2d 132, 142, 148 P.3d 1029 (2006).

¶47 The hearing panel concluded that Mr. Martin was discharged for disqualifying misconduct under former RCW 43.101.010(7) as required under RCW 43.101.105(1)(d). Even though Mr. Martin actually resigned from his position with the Stevens County Sheriff's Office, this resignation was treated as a discharge for purposes of the decertification proceedings. Former RCW 43.101.010(8) provides that

[a] peace officer is "discharged for disqualifying misconduct" within the meaning of subsection (7) of this section under the ordinary meaning of the term and when the totality of the circumstances support a finding that the officer resigned in anticipation of discipline, whether or not the misconduct was discovered at the time of resignation, and when such discipline, if carried forward, would *more likely than not* have led to discharge for disqualifying misconduct within the meaning of subsection (7) of this section.

The ultimate issues at the decertification hearing were (1) whether Mr. Martin resigned in anticipation of discipline and (2) whether he engaged in disqualifying misconduct. *See* former RCW 43.101.010(8). And, the Commission had to prove these ultimate facts by "clear, cogent, and convincing evidence." Former RCW 43.101.380(1). We conclude that the Commission did so.

¶48 Conclusion of law 4.6 states, "The petitioner bears the burden of proof by clear, cogent, and convincing evidence." AR at 157. And the hearing panel properly applied the clear, cogent, and convincing standard to the ultimate issues in the case. In conclusion of law 4.12, the hearing panel concluded:

> The Panel concludes that petitioner established by clear, cogent, and convincing evidence that Deputy Martin engaged in conduct that would constitute a crime involving dishonesty or false statement within the meaning of Evidence Rule 609(a), by engaging in conduct constituting the crime of Making a False or Misleading Statement to a Public Servant. This conduct is disqualifying misconduct under [former] RCW 43.101.010(7)(b).

AR at 158.

¶49 *Attorney Fees.* The equal access to justice act, RCW 4.84.350, provides a limited award of fees against the state to the prevailing party. Mr. Martin is not the prevailing party. Therefore, we deny his request for fees. RCW 4.84.340-.360.

¶50 We reverse the superior court and affirm the Commission's decision revoking Mr. Martin's peace officer certification.

SWEENEY and BROWN, JJ., concur.

Review denied at 169 Wn.2d 1002 (2010).